UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TWIN CITY FIRE INSURANCE COMPANY, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. _____ |
| JEFFREY W. CARPENTER, | § § § | |
| *Defendant.* | § | |

# COMPLAINT

Twin City Fire Insurance Company ("Twin City") files this Complaint for a declaratory judgment against Jeffrey W. Carpenter ("Carpenter"), seeking a declaration that the insurance policy at issue does not provide coverage in connection with any purported "Stowers Claim" he acquired via a turnover order in an underlying state court lawsuit.

## PARTIES

1. Twin City Fire Insurance Company is a company formed under the laws of the state of Indiana with its principal office in Hartford, Connecticut.

2. Carpenter is a Texas citizen who resides at 7246 Mimosa Lane, Dallas, Texas 75230-5444, where he may be served with process.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

4. This Court has personal jurisdiction over Carpenter because this action arises out of his specific contacts with Texas and he has continuous and systematic contacts with Texas

such that exercising specific and general jurisdiction does not offend traditional notions of fair play and substantial justice.

5. Venue is proper in this judicial district under 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claim occurred in this judicial district.

## FACTUAL BACKGROUND

### *The Policy*

6. Twin City issued a Private Choice Encore Policy (Policy No. 00 KB 00229269-07) ("Policy") to its named insured, Southwest Housing Management. The Policy also recognized as insureds Southwest Housing Development Company, Inc., Affordable Housing Construction, Inc., and, as the former President of Southwest Housing Management, Brian Potashnik. The Policy was effective from 3/04/07 to 3/04/08, and had a policy limit of $1,000,000, a limit that erodes with the payment of defense costs.

7. The Policy includes an "Employment Practices Liability Coverage Part" that provides the following coverage grant: "The Insurer Shall pay **Loss** on behalf of the **Insureds** resulting from an **Employment Practices Claim** first made against the **Insureds** during the **Policy Period** or Extended Reporting Period, if applicable, for an **Employment Practices Wrongful Act** by the **Insureds.**"

8. The Policy defines "Employment Practices Claim" as including "any . . . civil proceeding commenced by the service of a complaint or similar pleading . . . by or on behalf of an **Employee** . . . with an **Insured Entity**."

2

9. The Policy defines "Employment Practices Claim" in terms of:

A **Wrongful Act**[1] involving any:

(1) "wrongful dismissal, discharge or termination of employment (including constructive dismissal, discharge or termination), wrongful failure or refusal to employee or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

(2) sexual or other workplace harassment, including quid pro quo and hostile work environment;

(3) employment discrimination, including discrimination based upon age, gender, race, color, national origin, religion, creed, marital status, sexual orientation or preference, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal , state or local law;

(4) invasion of privacy, employment-related defamation (including libel and slander) or any employment related misrepresentation;

(5) Retaliation;

(6) breach of any oral, written, or implied employment contract, including without limitation, any obligation arising out of any personnel manual, employee handbook, or policy statement; or

(7) violation of the Family and Medical Leave Act.

10. Importantly, the Policy defines "Loss" as:

The amount that the **Insureds** are legally obligated to pay as a result of a **Claim**, including . . . Defense Costs, damages, settlements, judgments, and pre- and post-judgment interest.

**Loss** shall include punitive and exemplary damages, liquidated damages awarded pursuant to the Age Discrimination in Employment Act or Equal Pay Act, or the multiple portion of any

---

[1] The Policy defines "Wrongful Act" as "any actual or alleged: (1) error, misstatement, misleading statement, act, omission, neglect or breach of duty; or (2) matter claimed against an **Insured Person** solely by reason of their serving in such capacity."

multiplied damage award where insurable by law. Regarding the insurability of such damages, the Insurer shall not contend for any reason, unless appropriate to do so as a matter of law or public policy, that such damages are uninsurable. The insurability of such damages shall be governed by the laws of any applicable jurisdiction that permits coverage of such damages.

**Loss** shall not include:

. . .

(5) **salaries, wages, or bonuses, except as a component of a front or back pay award**.

11. The carve-out for salaries, wages, or bonuses is clear-cut and straightforward. Put simply, Twin City never agreed that the insured may promise to pay its employees compensation and then refuse to pay it and hand off that obligation to Twin City.

12. The Policy sets forth numerous exclusions. One such exclusion states: "Other than **Defense Costs**, the Insurer shall not pay **Loss** for any **Claim** . . . based upon, arising from, or in any way related to liability incurred for breach of any written employment contract, provided that this exclusion shall not apply to liability that would have been incurred in the absence of such contract."

### *The Underlying Lawsuit*

13. Carpenter, a former employee of one of the Southwest entities, sued Southwest Housing Development Company, Inc., Southwest Housing Management Corporation, Inc., a/k/a and d/b/a Southwest Housing Management Company, Inc., Affordable Housing Construction, Inc. (collectively "Southwest entities"), and Brian Potashnik ("Potashnik") in Dallas County Court at Law No. 5 in Cause No. CC-08-2072-E ("Underlying Lawsuit"). Carpenter alleged that Southwest and Potashnik failed to pay him certain annual bonuses set forth in his employment contract. Additionally, he alleged that Potashnick, who was looking to sell the companies,

promised to pay him a bonus out of the sale proceeds if Carpenter continued with his employment through the time of sale but later, Potashnik repudiated the alleged agreement.

14. The underlying lawsuit is devoid of any allegation that Carpenter was wrongfully harassed, discriminated against, defamed, retaliated against, or any other wrongful conduct contemplated by the Policy, including the definition of "Employment Practices Wrongful Act" and the definition of "Loss." He simply alleged that his employer promised him certain compensation and later failed to pay.

### *Twin City defends under reservation*

15. Southwest and Potashnik requested Twin City to pay the defense costs submitted by their chosen defense counsel. Twin City agreed to pay and did pay defense costs submitted by Southwest and Potashnik's chosen counsel subject to a full reservation of rights that included the right to deny indemnity coverage. Twin City also reserved all other rights and defenses available under the Policy and applicable law.

16. After minimal discovery had occurred in the Underlying Lawsuit, Carpenter's attorney issued a purported "Stowers demand" to Twin City, seeking payment of the remaining policy limits. Twin City declined to pay Carpenter the remaining policy limits because it does not owe its insureds a duty to indemnify given the definition of "Loss" and the policy's exclusions.

### *The trial*

17. The case was tried to a jury in January 2018. The jury determined, among other things:

- Carpenter and Southwest Housing Management did not have an agreement that Southwest Housing Management would pay one or more annual bonuses to Carpenter covering the period from March 15, 2005 through March 15, 2007;

- The Southwest entities, Potashnik and Carpenter formed an agreement on October 13, 2006 to pay Carpenter 3% of the total of gross asset sale revenue to sellers, less normal closing costs, less sale proceeds bonuses paid to employees ("sale proceeds bonus") if Carpenter would stay as long as needed to help make the asset sale happen.

- The Southwest entities and Potashnik failed to comply with that agreement to pay a sale proceeds bonus resulting in $928,020.76 in damages.

- Carpenter did not "perform compensable work staying on as long as needed to help make the asset sale happen" for any of the Southwest entities.

- Carpenter did not "perform compensable work for Southwest Housing Management for which he was not compensated, excluding any staying on to help make the asset sale happen."

18. Following the trial, the court entered a Final Judgment, awarding Carpenter actual damages of $928,020.76, attorneys' fees in the amount of $820,818.00, as well as pre and post-judgment.

19. Following the entry of the Final Judgment, Twin City continued funding the defense on behalf of its insureds by funding the appeal to the Fifth Judicial District Court of Appeals and the Texas Supreme Court. Additionally, Twin City used the remaining policy limits to post collateral for a supersedeas bond through the duration of the appeal. The appeals, however, were not successful, and a claim was made against the bond, resulting in the policy being completely exhausted. Because the policy was exhausted, Twin City notified its insureds that it no longer has a duty to defend under the policy.

20. On April 30, 2021, the trial court in the Underlying Lawsuit entered an order titled, "Order Granting Amended Motion for Turnover of Stowers Claim." The order states that "Carpenter is entitled to the right to have liquidated all common law causes of action Judgment Debtors may own under *G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544

(Tex. Comm'n App. 1929) and its progeny, to see if they might satisfy, in whole or in part, the judgment in this case." The order also states that "[t]his specifically includes . . . those concerning Private Choice Encore! Policy number 00KB 0229269-07 that Twin City Fire Insurance Company issued."

### REQUEST FOR DECLARATORY JUDGMENT

21.     To succeed on a Stowers claim under Texas law, the plaintiff must establish: (i) unconditional demand (offers a full and final release for the insured); (ii) within the policy limits; (iii) ordinarily-prudent insurer would accept demand, considering the likelihood and degree of the insured's potential exposure to an excess judgment; and (iv) *the claims are covered by the policy*. *See American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842 (Tex. 1994). With respect to the fourth element—coverage—"an insurer has no duty to settle a claim that is not covered under the policy." *Id*. at 848.

22.     Twin City maintains that Carpenter, as the purported holder of a Stowers claim by virtue of the turnover order, cannot establish these elements—starting with coverage. Accordingly, there exists an actual controversy between Carpenter and Twin City as contemplated by 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rule of Civil Procedure. Accordingly, under these statutory provisions, Twin City seeks a declaration from this Court of the rights, status, and other legal relations of the parties in relation to Carpetner's purported Stowers claim, including whether his claim is covered by the policy, which expressly excludes all claims for salaries, wages, and bonuses. This Court's declaration shall have the force and effect of a final judgment or decree. 28 U.S.C. § 2201(a).

CONCLUSION

Pursuant to 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure, Twin City Fire Insurance Company respectfully requests this Court to enter a declaratory judgment as set forth above and to grant any other and further relief as this Court deems just.

Respectfully submitted,

CHAMBERLAIN, HRDLICKA, WHITE
WILLIAMS & AUGHTRY

By: */s/ Steven J. Knight*
STEVEN J. KNIGHT
State Bar No. 24012975
steven.knight@chamberlainlaw.com
1200 Smith, Suite 1400
Houston, Texas 77002
(713) 658-1818

HARTLINE BARGER, LP

Melissa Dorman Mathews
State Bar Number 00790603
8750 N. Central Expressway, Suite 1600
Dallas, Texas 75231
(214) 369-2100

COUNSEL FOR TWIN CITY FIRE INSURANCE COMPANY

4088434.v1